THOMAS McGARRY *vs.* HOLYOKE STREET RAILWAY COMPANY.

Hampden.    September 23, 1902. — October 29, 1902.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Street Railway.*

In an action for an assault and battery by a conductor of a street railway company in putting the plaintiff off a car on which he had refused to pay the fare demanded, it appeared, that the car ran between a place called Mountain Park and the post office in Holyoke, and had on it the sign " Mountain Park ", but that when the plaintiff boarded the car it was going from the park to the post office, that the plaintiff desiring to go to the park asked the conductor if this was a Mountain Park car and the conductor said that it was, that the plaintiff then got on the car, paid a fare and rode to the terminus at the post office, that the car was then reversed and the plaintiff took the same seat he had occupied

before, facing the other way, that after the car started on its return trip the conductor demanded another fare which the plaintiff refused to pay, whereupon the conductor put him off the car. It appeared that the plaintiff had noticed on other cars operated by the defendant that the signs were changed when the cars were reversed, indicating the terminus for which they were bound. *Held*, that the plaintiff was wrong in refusing to pay the second fare and that the conductor was justified in putting him off, using no more force than was necessary; that the plaintiff had asked a plain question to which the conductor gave a correct answer, and that the plaintiff was not justified in thinking that the car was on the way to the park because it had on it the sign "Mountain Park", the defendant not being bound to adopt the same system of signs on all its cars.

On the issue whether a conductor on a street railway used more force than was necessary in putting the plaintiff off his car on his refusal to pay his fare, if it appears that the conductor had to use force to put the plaintiff off and that the plaintiff was resisting, the mere fact that the plaintiff landed in the street on his head is not sufficient to warrant a finding that undue force was used; nor is the additional fact that the car had not altogether come.to a stop when the conductor laid hold of the plaintiff, the plaintiff admitting that it had almost stopped and that by the time the conductor had him off he "guessed" it had stopped, sufficient to warrant such a finding.

TORT for assault and battery by a conductor of the defendant in putting the plaintiff off one of its cars. Writ dated September 15, 1898.

The case was tried in the Superior Court before *Dewey*, J. At the close of the evidence the judge ordered a verdict for the defendant, and it was agreed by the parties and understood by the judge, that the judge should report the case for the consideration of this court. In accordance with this agreement and understanding, after the death of *Dewey*, J., *Maynard*, J., at the request of the parties signed the report to which they had agreed. If the ruling of the judge was right, the verdict was to stand; otherwise, judgment was to be ordered for the plaintiff in the sum of $100 and costs.

*A. L. Green & F. F. Bennett*, for the plaintiff.

*W. H. Brooks & W. Hamilton*, for the defendant.

LORING, J. This is an action for assault and battery. The plaintiff's story is, that he hailed one of the open cars of the defendant, on High Street in the city of Holyoke near the city hall, when it was going in the direction of the post office, and asked the conductor whether it was a Mountain Park car. On being told that it was, he got on the car, paid five cents, the fare demanded, and rode to the terminus of the road at the post office, where the car stopped. The conductor then changed the

trolley and turned the backs of the seats so that passengers would face the other way.  While the conductor was doing this the plaintiff stood on the footboard, and when this was done, sat down on the same seat he sat on before.  After the car had gone about as far as the city hall on the return trip, the conductor demanded of the plaintiff another fare.  This the plaintiff refused to pay on the ground that, when he boarded the car, he wanted to go to the park and had asked if it was a Mountain Park car and the conductor had said that it was.  The conductor then told him that if he did not pay his fare he would call a policeman.  Later, the conductor came back and said that the superintendent was on the car and if the plaintiff did not pay his fare, he would have to put him off; upon which the plaintiff told the conductor to get the superintendent and he would give him his reasons; the conductor did not bring the superintendent, but leaned over the seat and said, " Get off the car"; and added that if he had the plaintiff in some quiet place he would break his face or would like to do it.  Later, the car "was almost brought to a stop";· the plaintiff was sitting near the outside end of one of the seats; no one else was sitting on that seat; the conductor came across from the other side of the car, in front of the seat on which the plaintiff was sitting, and said to the plaintiff that he must pay his fare or get off the car; and then, in the words of the plaintiff, " he caught hold of me"; "while he was pulling me, I got hold of some part of the car to try to save myself"; "I don't know whether I took hold of the end part of the seat I was sitting on with one hand, and the back of the seat with the other, and held back; I could n't swear; I caught hold of something when he caught hold of me; he was n't right off the car, he threw me off; I went off first; when I got off the car he was on the headboard; he did n't go first; I did n't step on the footboard as I went off; I fell off the footboard into the street; he did n't give me a chance to step down on the footboard; I don't remember stepping on anything; I did n't grab hold of the post and hold back when I was on the footboard; I did n't grab anything, for the first thing I knew when I left the seat, I was on the ground; I grabbed something, of course; when I went down I struck on my head; there was a scar there at some time; there are n't any there now that I know of; there was a scratch

on my face; I did n't have a doctor." On direct examination he said further, " He caught me by the arm and the sack coat "; and on cross-examination, that by the time he reached the ground the car had stopped. ·

The testimony of the plaintiff was confused; more than once he took back a previous statement; but we think that what we have said is a fair statement of his story, except in certain particulars, which we shall refer to later on.

1. We are of opinion that the plaintiff was wrong in refusing to pay the second fare.

When he boarded the car, he did not ask whether the car was going to Mountain Park; what he did ask was, " if it was a Mountain Park car."

That this was what he asked, was testified to by the plaintiff on both direct and cross-examination. We do not think that this is modified, as the plaintiff contends, by his statement that " I told him when I got on the car that I wanted to go to Mountain Park." This was testified to by the plaintiff when he was stating what was said when the conductor first asked for a second fare and the plaintiff refused to pay it; taken in connection with the statement made by him, on both direct and cross-examination, this must be taken to mean that when the conductor asked for the second fare the plaintiff then told him that he wanted to go to Mountain Park, when he got on the car.

The conductor might have thought that the plaintiff took the car on its trip from the park to the city to make sure of a seat on its return trip to the park, or that he asked the question to identify the route, on which the car was then proceeding. But it was not for the conductor to speculate as to the plaintiff's purpose in taking the car. The plaintiff asked a plain question and the conductor gave a correct answer. It is perhaps worthy of notice, that the plaintiff on cross-examination admitted that he knew that Mountain Park lay on the other side of the Holyoke dam, and that he would not go in the direction the car was going when he boarded it, to go to Mountain Park; he " thought probably they would turn around. I knew there was a trolley car ran right round." There is nothing in the plaintiff's contention, that he was justified in thinking that the car was on its way to the park and refusing to pay his fare, because it had on

it the sign " Mountain Park " and he had noticed that on other cars run by the defendant the sign was changed when the cars were running in different directions, and always had a sign exposed to indicate the terminus they were bound for. The defendant was not bound to adopt the same system on all its cars.

2. The plaintiff's second contention is, that, on the evidence, the jury might have found that the defendant used unnecessary force. But we are of opinion that, looking at the plaintiff's story fairly as between the two parties, it does not warrant such a finding.

It is true that the plaintiff says that he landed on his head in the street and went off the car without touching the footboard; it is also true that he testified that the car had not stopped when the conductor began to put him off; but he admits that when the conductor undertook to put him off, the car was nearly at a standstill, and when he was put off, it had entirely stopped. The conductor could not but have understood that the plaintiff meant to resist being put off ; the plaintiff's suggestion that he " got hold of some part of the car to save himself," when construed with the rest of the testimony, cannot be taken to mean that he did not intend to resist and did not take hold of the car for that purpose. If the plaintiff made the conductor understand that he would resist being put off, the conductor was justified in using force in putting him off, especially after again telling him, and for the third time, that he must pay his fare or get off. If the conductor had to use force to put him off and the plaintiff resisted, the mere fact that he landed on his head is not sufficient to warrant a finding that undue force was used. It would have been better if the car had actually stopped before the conductor put his hands on him ; but the plaintiff admits that it had then " almost stopped," and " by the time he had me off the car, I guess the car was stopped." In another place he went further and admitted that " when the car was stopped I was sitting more to the left hand side of the seat ; he came in there and he took hold of me." But we assume that the jury could have found that the former statement was true and that the car had not altogether come to a stop when the conductor laid hold of the plaintiff.

*Judgment on the verdict.*